UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE SIMMONS,

      Plaintiff,

                                     Case No. 10-13681

v.

                                     Honorable Patrick J. Duggan

DARRIN GRANDISON and WILLIAM
DAWSON, individually and in their
capacities as Michigan State Police Officers,

      Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 20, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On September 16, 2010, Catherine Simmons ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Michigan State Police Detective Specialists Darrin Grandison and William Dawson ("Defendants") violated her constitutional rights during an investigation of suspected money laundering. Before the Court is Defendants' Motion for Summary Judgment, filed on March 8, 2011 pursuant to Federal Rule of Civil Procedure 56. The matter has been fully briefed, and the Court heard oral argument on June 9, 2011. For the reasons stated below, the Court grants Defendants' Motion in part and denies it in part.

## I. Factual and Procedural Background

Detective Specialists Grandison and Dawson are assigned to Gaming Unit of the Michigan State Police, which is tasked with the enforcement of Michigan's gambling laws. On June 7, 2009, Grandison was asked by his Sergeant to investigate a report of suspicious play at the Greektown Casino in Detroit. The casino's surveillance team had advised the Michigan State Police that a patron was "force feeding" slot machines.[1] Grandison drove to the casino and called the surveillance staff to learn more about the specific conduct observed. A surveillance officer explained that Plaintiff had recently redeemed a "large sum" of TITO tickets[2] and had returned to the slot machines, where she was acquiring more TITO tickets. Upon arriving at the casino, Grandison asked the surveillance officer for Plaintiff's description and current location. He then observed Plaintiff from a distance of approximately forty to fifty feet. Plaintiff inserted a bill into the slot machine, pushed the "play" button eight to ten times, and cashed out her remaining credits for a TITO ticket. After watching Plaintiff repeat these steps a number of times, Grandison contacted casino surveillance. He asked what denomination of bills Plaintiff was using, and was told that they were $100 bills. Grandison explained to the surveillance officer that he was going to initiate contact with Plaintiff. Grandison requested uniformed

[1] "Force feeding" refers to a patron's repeated insertion of money into a slot machine either without gambling or gambling on a very limited basis. According to Grandison, this tactic is used by those laundering money. The perpetrator feeds currency into the slot machine to purchase play credits, obtains a ticket for those credits, and redeems the ticket elsewhere in the casino for new currency.

[2] "TITO" is an abbreviation for "ticket in / ticket out," and refers to the tickets issued and accepted by the casino's slot machines.

casino security officers to accompany him in order to validate his claim of being a police

officer, as he was dressed in plain clothes at the time.

Grandison and two casino security officers approached Plaintiff.  Grandison stated

that he was a state trooper with the Michigan State Police Gaming Section and asked

Plaintiff to cash out and follow him.  Plaintiff refused to do so.  Grandison asked Plaintiff

a second time, and she again refused.  Grandison then pressed the button on the machine to

cash out the remaining credits and instructed Plaintiff to take the ticket and follow him.

Plaintiff took the ticket and accompanied Grandison and the casino security officers to an

interview room.

In the interview room, Grandison searched Plaintiff's purse for weapons.  He then

advised Plaintiff that he was going to take the money and TITO tickets she was holding in

her hand.  Plaintiff pulled back at first, but after Grandison explained that the room was

subject to video and audio surveillance, she turned over the money and tickets.  Plaintiff

asked to leave, and Grandison replied that she could not leave until after he completed an

accounting of the money and tickets.  Grandison asked Plaintiff if she knew what the total

of the money and tickets was, and she responded that she came to the casino with five

thousand dollars.  Grandison counted eleven $100 bills and twenty-three TITO tickets.  He

totaled these and explained to Plaintiff that his total was $3,543.  Grandison then told

Plaintiff that she was free to leave, and she exited the interview room.  According to

Grandison, the entire encounter with Plaintiff lasted less than thirty minutes.  Grandison

Dep. 49:19-23, Aug. 27, 2010.  Plaintiff claims that she was detained for approximately

forty-five minutes.  Pl.'s Resp. Br. 2.

3

Later that night, Grandison spoke with Detective Specialist William Dawson of the

Michigan State Police Gaming Unit, who had already opened an investigation relating to

possible money laundering by Plaintiff.  Grandison therefore turned his materials over to

Dawson.  Dawson continued his investigation for the next fifteen months, during which

Plaintiff or her attorney inquired several times about the return of the money.  The money

has since been returned to Plaintiff.

Plaintiff filed this suit on September 16, 2010, alleging that her constitutional rights

were violated by Grandison's search and seizure of her person (Count I); Grandison's

search and seizure of her property (Count II); and Dawson's "illegal retention" of her

property during the investigation (Count III).

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505,

2512 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates

summary judgment against a party who fails to establish the existence of an element

essential to that party's case and on which that party bears the burden of proof at trial.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  The movant

has an initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at

323, 106 S. Ct. at 2553.

4

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Discussion

**A. Governing Law**

Although Plaintiff raises her claims under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, her search and seizure claims are properly analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871. The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

Police officers may conduct investigatory stops that fall short of traditional arrest where the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 1874 (1968)). The reasonable

suspicion inquiry requires the Court, considering the totality of the circumstances, to determine whether the officer has a "particularized and objective basis" for suspecting wrongdoing.  *Id.* at 273, 122 S. Ct. at 750 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695 (1981)).  Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  *Id.* at 273, 122 S. Ct. at 750-51 (quoting *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695).  "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Id.* at 274, 122 S. Ct. at 751 (citations omitted).

## B. Plaintiff's Detention by Grandison

### 1. Reasonable Suspicion

Grandison had reasonable suspicion to believe that Plaintiff was committing criminal activity.  Casino surveillance had explained to him that Plaintiff's play was inconsistent with that of normal gamblers.  Grandison also observed Plaintiff in person, concluding that her gambling activity was minimal and she was attempting to change bills.  Grandison's training and experience in the enforcement of gaming laws enabled him to recognize the signs of possible money laundering in Plaintiff's actions.  While Grandison could not yet establish that Plaintiff had engaged in money laundering, his decision to detain her was based on more than a hunch.  Upon observing specific and unusual behavior that was consistent with criminal activity, Grandison reasonably chose to investigate further.

6

Plaintiff argues that Grandison had no reason to suspect that she was engaged in illegal activity. She contends that it is not illegal to gamble against a $100 bill eight to ten times, cash out the remaining balance, and begin the process again with another $100 bill. Pl.'s Resp. Br. 8. Such conduct is only legal, however, where it is not used to conceal the proceeds of criminal activity. Plaintiff's unusual play gave Grandison reason to conclude that she was merely attempting to change bills. Grandison's training and experience indicated that a frequent motive for changing bills is to conceal the proceeds of criminal activity. This sort of concealment is illegal under Michigan law. *See* Michigan Compiled Laws § 750.411k. Grandison could articulate a particularized basis for suspecting wrongdoing, and the reasonable suspicion standard requires nothing more.[3]

### 2. Intrusiveness of the Search and Seizure

The degree of suspicion is only the first part of the reasonableness inquiry relating to a *Terry* stop. The Court also considers the manner in which the search and seizure were conducted. *Terry*, 392 U.S. at 28, 88 S. Ct. at 1883. "The scope of activities during an investigatory detention must reasonably be related to the circumstances that initially justified the stop." *United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991). "When actions by police exceed the bounds permitted by reasonable suspicion, the seizure becomes an arrest and must be supported by probable cause." *Id.* "The Supreme Court

---

[3] Plaintiff asserts that Grandison seized her because he believed that the $100 bills "might have drug residue on them or might be marked money." Pl.'s Resp. Br. 9. This assertion finds no support in the evidentiary record before this Court, as Grandison testified that Plaintiff appeared to be changing the bills for an "unknown" reason. Grandison Dep. 52:6-53:9.

has declined to establish a litmus test to determine when a *Terry* stop becomes an arrest, leaving the lower courts to decide the issue on a case-by-case basis." *Id.* To make this determination, the Court looks to the scope and nature of the restraints placed on a person's liberty. *Id.* (citing *United States v. Place*, 462 U.S. 696, 705-08, 103 S. Ct. 2637, 2644-45 (1983)). In distinguishing a *Terry* stop from an arrest, the Court should consider the conduct of the police, the characteristics of the particular defendant, and the physical surroundings of the encounter. *Id.* at 857.

Plaintiff argues that the duration of her detention exceeded that permitted in an investigatory stop, turning it into an arrest. In assessing whether a detention is too long in duration to be justified as an investigative stop, courts examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985). The Court must also consider the law enforcement purposes served by the stop and the time reasonably needed to effectuate those purposes. *Id.* at 685, 105 S. Ct. at 1575. Although Plaintiff was detained in a private interview room rather than in a public area of the casino, Grandison told her that she could leave once he completed an accounting of the money and TITO tickets. Grandison did not detain Plaintiff longer than was necessary to seize the suspected evidence of money laundering. The activity occurring during the stop was limited to the collection of evidence of suspected money laundering, and thus, did not exceed the circumstances justifying the stop. Under these facts, the Court cannot conclude that Plaintiff's detention constituted an arrest.

8

Plaintiff concludes that because she was seized by Grandison, the encounter cannot be a *Terry* stop.  Pl.'s Resp. Br. 7.  A *Terry* stop, however, is a limited form of seizure under the Fourth Amendment.  *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006).  The issue is whether the seizure is so limited as to be justified by reasonable suspicion, rather than the more stringent test of probable cause.  Because Grandison's detention of Plaintiff was limited to the circumstances justifying the initial stop, it was reasonable under the Fourth Amendment.

## C. Grandison's Seizure of Plaintiff's Property

"Determining whether a seizure of personal property based upon less than probable cause is reasonable for the purposes of the Fourth Amendment involves a two-step inquiry."  *Farm Labor Org. Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 532, 544 (6th Cir. 2002).  "First, the Court must determine whether the detaining officer has a reasonable and articulable suspicion that the property he wishes to seize is connected with criminal activity."  *Id.* (quoting *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983)). "Second, the scope of the seizure must be reasonable, both in duration and in intrusiveness."  *Id.* (citing *United States v. Place*, 462 U.S. 696, 708, 103 S. Ct. 2637, 2645 (1983)).  The Court cannot conclude that the fifteen-month duration of the seizure here falls within the realm of a *Terry* analysis, which authorizes a brief investigatory stop. Thus, the seizure was permissible only if supported by probable cause.  "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'"  *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (quoting *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)).  It is based on facts

and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit a criminal offense. *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002).

Although Grandison had observed Plaintiff gambling in such a manner as to indicate that she was merely changing bills, that activity in and of itself is not criminal. An offense is committed only if the money being changed is the proceeds of criminal activity. At the time Grandison seized Plaintiff's money, there were no facts known to him indicating that Plaintiff's money had been obtained through criminal activity. Absent such facts, a prudent person could not conclude that Plaintiff had committed, was committing, or was about to commit a criminal offense. All that was known was that Plaintiff's gambling was consistent with the behavior of money launderers. The Court cannot conclude as a matter of law that Grandison had probable cause to seize Plaintiff's property for more than a brief period of time. With respect to this claim, Defendants' motion for summary judgment must therefore be denied.

At the hearing, Defendants suggested that the seizure of Plaintiff's money and tickets was permissible under the exigent circumstances exception to the Fourth Amendment's warrant requirement. A warrantless seizure may be justified by "'the exigencies of the situation.'" *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S. Ct. 2408, 2414 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456, 69 S. Ct. 191, 193 (1948)). The need to preserve easily disposable evidence may justify a warrantless search or seizure. *Georgia v. Randolph*, 547 U.S. 103, 117 n.6, 126 S. Ct. 1515, 1525 n.6 (2006). The police, however, bear a "heavy burden" when attempting to demonstrate exigent circumstances.

10

*Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S. Ct. 2091, 2097 (1984).  Exigent

circumstances exist where "police action literally must be 'now or never' to preserve the

evidence of the crime."  *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S. Ct. 2796, 2802

(1973).  The Court is unaware of any authority allowing a prolonged seizure of money

based on mere suspicion that it is the proceeds of criminal activity.  As Defendants have

failed to identify any such authority, the Court cannot conclude as a matter of law that the

exigent circumstances exception applies to the seizure of Plaintiff's money.

**D. Dawson's Retention of Plaintiff's Property**

Plaintiff alleges that Dawson's retention of her property during the fifteen-month

investigation violated her due process rights.  Compl. ¶ 34.  The Fourteenth Amendment to

the United States Constitution provides, in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or
> immunities of citizens of the United States; nor shall any State deprive any
> person of life, liberty, or property, without due process of law; nor deny to any
> person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV § 1.  "Nothing in that Amendment protects against all

deprivations of life, liberty, or property by the State."  *Parratt v. Taylor*, 451 U.S. 527,

537, 101 S. Ct. 1908, 1914 (1981).  The Amendment protects only against deprivations

"without due process of law," and "postdeprivation remedies made available by the State

can satisfy the Due Process Clause."  *Id.* at 537-38, 101 S. Ct. at 1914.  "Although the

state remedies may not provide the respondent with all the relief which may have been

available if he could have proceeded under § 1983, that does not mean that the state

remedies are not adequate to satisfy the requirements of due process."  *Id.* at 544, 101 S.

Ct. at 1917.

Defendants argue that Plaintiff has the state law remedies of conversion and claim and delivery to recover her property. The Court cannot see how these remedies are inadequate, as they would ensure the return of Plaintiff's money. Furthermore, Plaintiff has specifically sought these remedies in a lawsuit filed in Wayne County Circuit Court on October 20, 2009. *See* Defs.' Br. Supp. Mot. Summ. J. Ex. 4. Because the state remedies provided are adequate to address the deprivation alleged by Plaintiff, the Court concludes that Defendants must be granted summary judgment with respect to Plaintiff's due process claim.

Plaintiff alleges that Dawson's retention of her property deprived her of equal protection of the laws. Compl. ¶ 34. A person asserting an equal protection claim, however, must show discrimination because of membership in a particular class, not merely that she was treated unfairly as an individual. *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Plaintiff has not alleged that she was deprived of her property because of membership in a particular class. Absent such allegations, Defendants must be granted summary judgment on Plaintiff's equal protection claim.

**E. Sovereign Immunity**

Plaintiff has sued Defendants in both their individual capacities and their official capacities as officers of the Michigan State Police Department. Defendants argue that Plaintiff's official capacity claims against them are barred by the doctrine of sovereign immunity, and the Court agrees. "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct.

358, 361 (1991). Thus, Plaintiff's claims against Defendants Grandison and Dawson in their official capacities as Michigan State Police Detective Specialists are actually claims against the State of Michigan. A nonconsenting State cannot be sued in federal court unless Congress has abrogated the States' sovereign immunity through the valid exercise of its powers. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S. Ct. 1114, 1123 (1996). Congress did not waive the States' sovereign immunity through 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 109 S. Ct. 2304, 2310 (1989). Accordingly, the Court concludes that the doctrine of sovereign immunity bars Plaintiff's official capacity claims.

## F. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Where a defendant asserts the defense of qualified immunity, the Court must determine whether the defendant violated a constitutional right, and whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S. Ct. at 2156. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202, 121 S. Ct. at 2156-57.

Plaintiff has at least raised a genuine dispute of fact as to whether her constitutional right to be free from unreasonable search and seizure was violated. Grandison seized Plaintiff's money and tickets, and Defendants have failed to establish that the probable cause requirement for such a seizure was satisfied. As for whether a "clearly established" right was violated, it is certain that a police officer's reasonable suspicion of criminal activity only permits a brief seizure of a person or property. The law gives police officers ample notice that reasonable suspicion does not justify an indefinite seizure. *See Sharpe*, 470 U.S. at 685, 105 S. Ct. at 1575 ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop."). Because Defendants have not shown that any mistake as to the law's requirements was reasonable, the Court cannot conclude that the defense of qualified immunity bars Plaintiff's search and seizure claim against Grandison.

## IV. State Court Ruling

At the hearing, Defendants informed the Court that Plaintiff's state-court action was recently dismissed. Defendants seek to supplement the record in the event that the state court concludes that their actions were reasonable, asserting that such a ruling may have preclusive effect in this suit. Section 1983 does not override the law governing the preclusive effect of state-court judgments. *Migra v. Warren City Sch. Dist. Bd. of Educ.*,

14

465 U.S. 75, 85, 104 S. Ct. 892, 898 (1984). State-court judgments are entitled to the same preclusive effect in federal court as the judgment would have in the courts of that state. *Id.* at 85, 104 S. Ct. at 898. At the hearing, Defendants were unable to specify when the judgment might be available. Because speculation concerning the judgment would be improper, the Court declines to address its preclusive effect at this time. If, once the state court judgment becomes available, the parties seek to introduce it in support of a renewed request for summary judgment, the Court will permit them to do so.

## V. Conclusion

For the reasons stated above, the Court has concluded that Defendants must be granted summary judgment with respect to Count I, "Illegal Search and Seizure of Plaintiff's Person" and Count III, "Illegal Retention of Property." Because Plaintiff's remaining claim, Count II, "Illegal Search and Seizure of Plaintiff's Property," makes no allegations concerning Defendant Dawson, the Court concludes that Dawson should be dismissed from this action.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** with respect to Count I, "Illegal Search and Seizure of Plaintiff's Person" and Count III, "Illegal Retention of Property." Defendants' Motion is **DENIED** with respect to Count II, "Illegal Search and Seizure of Plaintiff's Property."

**IT IS FURTHER ORDERED** that Defendant Dawson is **DISMISSED FROM THIS ACTION**.

s/PATRICK J. DUGGAN

15

UNITED STATES DISTRICT JUDGE

Copies to:

James C. Cobb, Jr., Esq.
Joseph T. Froehlich, A.A.G.